Rick Richmond (SBN 194962)
*rrichmond@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
Ranja F. Rasul (SBN 336221)
*rrasul@larsonllp.com*
Jasmine M. Johnson (SBN 351979)
*jjohnson@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile:  (213) 623-2000

Attorneys for Plaintiff Adaptamed LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAPTAMED LLC,<br><br>        Plaintiff,<br><br>      vs.<br><br>WC HEALTH MSO LLC d/b/a WC HEALTH, a corporation, and COMMURE, INC., a corporation, and DOES 1-100,<br><br>        Defendants. | Case No. 3:26-CV-02486-JO-VET<br><br>Judge:   Hon. Jinsook Ohta<br>Magistrate Judge:<br>Hon. Valerie E. Torres<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISQUALIFY KIRKLAND & ELLIS LLP**<br><br>[*Filed concurrently with Declaration of Sirisha Marcoux; Declaration of Rick Richmond*]<br><br>Date:   July 30, 2026<br>Time:   9:30 a.m.<br>Crtrm.:  4C<br><br>Trial Date:   None<br>Action Filed:  April 20, 2026 |

LARSON
LOS ANGELES

Case No. 3:26-CV-02486-JO-VET

PLAINTIFF'S MOTION TO DISQUALIFY KIRKLAND & ELLIS LLP

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................2

FACTUAL BACKGROUND...........................................................................................4

LEGAL STANDARD .....................................................................................................9

ARGUMENT.................................................................................................................11

    I.      Adaptamed Was A Prospective Client Entitled To Protection Under Rule 1.18 ...................................................................................11

    II.    Kirkland Must Be Disqualified Because Commure's Interests Are Materially Adverse To Those Of Adaptamed..............................11

    III.   Kirkland Extracted Confidential And Material Information That Is Materially Harmful To Adaptamed.......................................................11

    IV.   Kirkland Cannot Escape Disqualification Because It Failed To Implement Adequate Safeguards .........................................................12

CONCLUSION.............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Messaging Technologies, Inc. v. EasyLink Services Intern. Corp.*,
913 F.Supp.2d 900 (C.D. Cal. 2012) ................................................................. 9

*Commure v. Canopy Works, Inc. et al.*,
Case No. 24-cv-2592 (N.D. Cal. 2024) .............................................................. 5

*In re County of Los Angeles*,
223 F.3d 990 (9th Cir. 2000) .............................................................................. 8

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*,
20 Cal.4th 1135 (1999) ....................................................................................... 8

*Westinghouse v. Kerr-McGee*,
580 F.2d 1311 (7th Cir. 1978) ........................................................................ 5, 6

*Winter v. Menlo*,
110 Cal.App.5th 299 .......................................................................................... 11

**Court Rules**

Cal. Rule of Prof. Conduct 1.18 .................................................................... 9, 10

Cal. Rule of Prof. Conduct 1.18(c) .................................................................... 10

Cal. Rule of Prof. Conduct 1.18(d) .................................................................... 11

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on July 30, 2026, at 9:30 a.m. in Courtroom 4C of the above-entitled Court, located at 221 West Broadway, San Diego, California 92101, Plaintiff Adaptamed LLC ("Plaintiff") will and does hereby move this Court pursuant to the Court's inherent authority and California Rules of Professional Conduct, Rule 1.18 for an order to disqualify Kirkland & Ellis LLP.

This motion is based on the following memorandum, declarations of Sirisha Marcoux and Rick Richmond, all other papers and records filed in this matter, and any further evidence or argument that may be presented in connection with the hearing on this motion.

Dated: May 15, 2026                LARSON LLP


By:      /s/ Rick Richmond
         Rick Richmond
         Catherine S. Owens
         Ranja F. Rasul
         Jasmine M. Johnson

         Attorneys for Plaintiff Adaptamed LLC

## **INTRODUCTION**

Kirkland & Ellis must be disqualified as counsel for Commure, Inc.  It has committed the cardinal sin of trying to represent the conflicting interests of opposing parties in this case.  Everyone knows that is a fatal problem that is virtually impossible to overcome.

Kirkland is one of the largest, most sophisticated, and enormously profitable law firms in the world.  This behemoth boasts more than 3,500 lawyers in its ranks.  At least 1,600 of them are partners.  In a law firm that huge, the potential conflicts of interest among clients and potential clients are almost limitless.  Every Kirkland partner understands the grave risk of talking to a potential client without first running a conflicts check.

Without first checking conflicts, you simply cannot talk with a potential litigation client about its ongoing investigation, litigation plans, and potential damages.  If you do, and that very litigation comes to fruition, what you have done will come to light.  You should withdraw from the case at that point.  Trying to stay in the case only exacerbates your existing conflict.  And staying in the case will eventually multiply the problems for your client, your co-defendant, and counsel for your co-defendant, with whom you are coordinating and sharing information.  Your refusal to withdraw will also create headaches for the Court.

The plaintiff in this case is a local San Diego business called Adaptamed.  Plaintiff was founded and developed by a practicing San Diego physician.  Plaintiff is sophisticated in developing and operating a bespoke electronic health records software system.  But Plaintiff is not sophisticated in litigation.  Plaintiff has no in-house counsel.  Plaintiff relies on outside lawyers it can trust.  With our assistance as outside counsel, Plaintiff has sued Commure, one of two defendants in this case.

Kirkland wants to represent Commure in this case.  Commure is an important, long-time Kirkland client.  Kirkland has represented Commure, for instance, in acquisitions of other tech companies that have developed software in the EHR

space.  Commure is a $6 billion healthcare tech company, backed by big money.  Commure's core platform consists of a patchwork of technologies obtained through serial aggressive acquisitions of much smaller targets.  Commure's apparent objective is to stitch these technologies together and then sell its patchwork quilt to investors in an IPO for a quick and handsome profit.

In February 2026, Adaptamed was referred to Kirkland as a potential client.  Three Kirkland partners jumped on the possible new representation.  They were told in the referral email that the potential engagement was a "time-sensitive IP lawsuit (plaintiff side)" against a "large tech company."  The client contact was Sirisha Marcoux, identified in her email signature block as Adaptamed's Chief Operating Officer, not the Chief Legal Officer or the General Counsel or anything like that.  Ms. Marcoux is not a lawyer.

The only ethical response to this outreach was, "who is the potential defendant?"  That is all Kirkland needed to know.  But instead of asking that one simple question, one of the Kirkland partners responded immediately to Ms. Marcoux, unabashedly telling her Kirkland wanted to "get a sense of the issue(s)" right away.  Another Kirkland partner jumped in, proclaiming "we'd be happy to help."  They pushed for an immediate videoconference to get underway.  Why would these Kirkland partners need a "sense of the issues" before they ran a basic conflicts check for a fast-developing litigation matter?  Why would they say they would "be happy to help" when they had no idea if a conflict existed?

Ms. Marcoux responded in an email with the only relevant ethical question: "To have this conversation, do you need to clear conflicts first?"

The Kirkland partners never answered.  The answer is obviously "yes."  There is no other answer.  With no answer from the Kirkland partners, Ms. Marcoux joined the call, but she asked again about the need for a conflicts check before discussing Adaptamed's lawsuit in the making.  The Kirkland partners brushed the concern aside, with a lawyerly admonition to this potential non-lawyer client that

3

Case No. 3:26-CV-02486-JO-VET

she should "just be careful," whatever that might mean.

The three Kirkland partners discussed the matter with Ms. Marcoux for half an hour. They learned all about Adaptamed's concerns. They learned that Commure was stealing Adaptamed's technology by using purloined log-in computer credentials from an Adaptamed client to access parts of Adaptamed's software system unrelated to the client's needs. They learned about Adaptamed's internal investigation leading to this lawsuit. They learned about the potential claims and listened to Ms. Marcoux's concern about potential damages. All of that information is at the heart of Adaptamed's claims against Commure in this case.

Because Kirkland chose to listen first and check for conflicts later, it is now ineligible to represent Commure in this case. It must be disqualified.

## FACTUAL BACKGROUND

On February 9, 2026, a mutual contact introduced Adaptamed's COO, Sirisha Marcoux—a lay person with no formal legal training—to Kirkland partners Aaron Lorber[1], F. Christopher Mizzo[2], and Todd L. Herst[3]. The introduction explicitly characterized the matter as a "time-sensitive IP lawsuit (plaintiff side)" against a "large tech company." (Marcoux Decl., Ex. 1 at 5.) Mr. Lorber responded to the email asking whether Ms. Marcoux was available the next day for a discussion so they could "get a sense of the issue(s)." (*Id.* at 3.) Mr. Mizzo followed up with, "we'd be happy to help." (*Id.* at 3.)

---

[1] Mr. Lorber is a Kirkland partner, who has been practicing law for approximately 18 years. He specializes in Technology and Intellectual Property transactions and has also represented clients in patent infringement litigations.

[2] Mr. Mizzo is a Kirkland partner, who has been practicing law for approximately 26 years. He is a former federal law clerk and trial lawyer who represents plaintiffs and defendants and specializes in intellectual property disputes.

[3] Mr. Herst is a Kirkland partner, who has been practicing law for approximately 12 years. Mr. Herst also specializes in Technology and Intellectual Property matters.

On February 10, 2026, a virtual meeting was scheduled to discuss the prospective representation.  Critically, prior to the meeting, Ms. Marcoux sent an email to Mssrs. Lorber, Mizzo, and Herst, specifically asking: **"To have this conversation, do you need to clear conflicts first?"** (*Id*. at 1.)  None of the three Kirkland partners replied to that email before the meeting.  (Marcoux Decl., ¶ 3.)  No conflicts check was run before the meeting.  No "ethical wall" was discussed. (Marcoux Decl., ¶ 7.)  Instead, these three Kirkland partners permitted a vulnerable layperson and prospective client to discuss her case at length under the reasonable belief that her disclosures would be protected and that it was okay for Kirkland to hear them. (Marcoux Decl., ¶ 8.)

Worse, at the outset of the February 10 virtual meeting, Ms. Marcoux— demonstrating a level of diligence that should have been modeled by the attorneys— asked *again* whether the partners needed to clear conflicts before she proceeded. (Marcoux Decl., ¶ 4.)  Rather than follow the standard operating procedure of a sophisticated "Big Law" firm, the partners offered only a vague directive to "just be careful." (*Id*.)  At no point did the three Kirkland partners warn Ms. Marcoux that Kirkland might already represent the very "large tech company" she was preparing to sue.  (Marcoux Decl., ¶ 7.)  Relying on their silence, along with the professional stature and prestige of the partners, and specifically explaining she was looking for a lawyer she could "trust," Ms. Marcoux proceeded.  (Marcoux Decl., ¶¶ 2, 6-8.)

For approximately thirty minutes, Ms. Marcoux then provided a comprehensive account of her and Adaptamed's position.  (Marcoux Decl., ¶ 8.) This included: (i) a point-by-point history of interactions between Adaptamed, its client, WC Health, and Commure, and Adaptamed's subjective impressions of those interactions; (ii) granular details of Adaptamed's internal investigation to date, including preliminary findings; and (iii) explicit inquiries into the merits of the case and specific valuation of potential recovery.  (Marcoux Decl., ¶ 8.)

Only *after* Kirkland had successfully extracted thirty minutes worth of

strategic and highly sensitive confidential information did the three Kirkland partners finally request the name of the potential defendant. (Marcoux Decl., ¶ 9.) The name was Commure.

Commure's name could hardly have come as a surprise. Kirkland leads Westlaw's list of the "Top 5" law firms representing Commure in litigation matters. "Intellectual Property & Technology" leads the list of the "Top 5" kinds of litigation in which Commure is involved. California is second on the "Top 5" list of jurisdictions in which Commure engages litigation counsel. One of Kirkland's leading litigators in its Los Angeles office, Mark Holscher, along with another Kirkland litigator in San Francisco, had been actively representing Commure in California federal court until their case settled in late 2025. *See Commure v. Canopy Works, Inc. et al.*, Case No. 24-cv-2592 (N.D. Cal. 2024).

A simple conflicts check would have warned these three Kirkland partners they could not take on this case for Adaptamed, because Commure was their client in IP litigation cases in California federal courts. Not long after the call with Ms. Marcoux, one of the Kirkland partners, Mr. Mizzo sent a perfunctory email stating the obvious: "After conducting a search, we've identified a conflict that prevents us from taking on the representation[.]" (Marcoux Decl., Ex. 1 at 1.)

Kirkland is one of the largest law firms in the world, with a reported 3,800 to 4,000 lawyers, of whom 1,600 are reported to be partners. We believe Kirkland has a robust conflicts checking system in place. (Richmond Decl., ¶ 5.) In the 1970's Kirkland became the poster child for conflicts involving competing clients, as reported in the famous case *Westinghouse v. Kerr-McGee*, 580 F.2d 1311 (7th Cir. 1978).[4] In the 1980s, Kirkland assigned a litigation partner, David Erie, to help

[4] Although it is now almost 50 years old, this famous conflicts case remains instructive today. As the Seventh Circuit described the circumstances then, they seem eerily familiar today: "The novel issues on this appeal are (1) whether an attorney-client relationship arises only when both parties consent to its formation or

manage conflicts issues.  (Richmond Decl., ¶ 6.)  In the 1990s, another litigation partner, James Schenk, was appointed to serve full-time as Kirkland's first in-house general counsel.  (*Id.*)

Today, Kirkland has a full complement of in-house general counsel staff who serve in its Office of General Counsel.  (Richmond Decl., ¶ 7.)  In particular, Kirkland has a General Counsel, several Assistant General Counsel, and numerous Deputy Assistant General Counsel.  (*Id.*)  These counselors are available to counsel with their partners about all kinds of ethical issues, including the ridiculous question of whether a Kirkland partner should do a conflicts checks before talking with a potential non-lawyer client in California who has a "time-sensitive IP lawsuit (plaintiff side)" against a "large tech company."  (*Id.*)

Prior to the filing of the complaint in this case, Commure's counsel was McDermott Will & Schulte, beginning in February 2026.  (Richmond Decl., ¶ 8.)  After extensive attempts to obtain information and explore a pre-litigation resolution were rebuffed, Adaptamed filed its complaint against Commure and WC Health on April 20, 2026.  (*Id.*)  Weeks later, on May 7, 2026, a Kirkland partner, Ingrid

---

can it also occur when the lay party submits confidential information to the law party with reasonable belief that the latter is acting as the former's attorney and (2) whether the size and geographical scope of a law firm exempt it from the ordinary ethical considerations applicable to lawyers generally."  *Westinghouse*, 580 F.2d at 1312.  With respect to Kirkland's creation of a supposedly protective wall between partners in its then two different offices, the Seventh Circuit explained: "[W]e do not recognize the wall theory as modifying the presumption that actual knowledge of one or more lawyers in a firm is imputed to each member of that firm.  Here there exists a very reasonable possibility of improper professional conduct despite all efforts to segregate the two sizeable groups of lawyers."  *Id*. at 1321.  And, even though Kirkland had persuaded a local Chicago federal district court judge that its then "large" size excused an ethical lapse (130 lawyers in Chicago and 40 lawyers in Washington, D.C.), the Seventh Circuit was unpersuaded, as this Court should be here: "In any event, there is no basis for creating separate disqualification rules for large firms even though the burden of complying with ethical considerations will naturally fall more heavily upon their shoulders."  *Id*. at 1318, 1321.

Petersen, emailed Adaptamed's counsel late that afternoon stating that Kirkland now represented Commure.  (*Id*.)

The following day, Ms. Marcoux told us about her earlier exposure to Kirkland partners about this case.  (Marcoux Decl., ¶ 11.)  We immediately alerted Kirkland to the conflict, meeting and conferring with Ms. Petersen that Friday evening, May 8, when we communicated our intent to file this disqualification motion.  (Richmond Decl., ¶ 9.)

The following Monday, May 11, Kirkland's Deputy Assistant General Counsel, Timothy Knapp, sent us an email.  (Richmond Decl., Ex. A.)  With all the respect we can muster in the circumstances, the email is a revisionist narrative, in an effort to avoid the firm's mandatory disqualification.  Kirkland now claims that its partners had taken "reasonable and appropriate measures" during the February 10 virtual meeting with Ms. Marcoux to "avoid exposure to any more information than was reasonably necessary" to determine whether Kirkland could represent Adaptamed in litigation against Commure.  (*Id*.)  That's just plain silly.  The only information needed was Commure's identification as the defendant in a potential lawsuit.

The email also claimed the three Kirkland partners warned Ms. Marcoux that no privilege would attach to their discussion and instructed her "not to share anything confidential."  (*Id*.)  Kirkland's self-serving email further asserted that because its three partners belatedly performed a conflicts check, "promptly" *after* the call, and because the firm has since implemented a "precautionary" ethical screen, no conflict exists.  (*Id*.)

This revisionist history stands in stark contrast to Ms. Marcoux's recollection of their discussion.  She does not recall anything being said about the lack of privilege or that an attorney-client relationship did not exist.  (Marcoux Decl., ¶ 6.)  Given her extraordinary diligence regarding conflicts—evidenced by her reminders about the need for a conflicts check—Ms. Marcoux would have immediately ended

the call had there been any warning that her disclosures would not be protected.  She *certainly* would not have proceeded to discuss Adaptamed's internal investigation and strategy in depth if she had been told there was a risk this highly sensitive information could be disclosed to the very adversary she was preparing to sue.  (*Id*.)  Kirkland's after-the-fact defense is not only contradicted by the record, it defies logic.

## LEGAL STANDARD

"For attorneys in the same firm to represent adverse parties in the same litigation is so patently improper that the rule of disqualification is a per se or 'automatic' one."  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1139 (1999) (citation omitted).[5]  "Clients, and the public, should expect confidentiality and loyalty from attorneys who effectively declare they practice law in a close, personal, and continuing association."  *Id*.  "These legitimate expectations would be frustrated if a firm could represent one party in litigation while [another] attorney [at] the firm represented an adversary in the same case."  *Id*. (holding that an attorney's "of counsel" relationship to a firm was sufficient to disqualify the entire firm).

"The fiduciary relationship existing between lawyer and client extends to preliminary consultations by a prospective client with a view to retention of the lawyer, although actual employment does not result."  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1147-48 (1999) (quotation and citation omitted).  "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*."  *Id*. at 1148 (quotation and citation omitted).  "The general rule is that presuming an attorney possesses confidential information

---

[5] Disqualification motions in California federal courts are governed by California law. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

requires presuming the same for his law firm[.]" *Advanced Messaging Technologies, Inc. v. EasyLink Services Intern. Corp.*, 913 F.Supp.2d 900, 909 (C.D. Cal. 2012).

In California, prospective client relationships are governed by Rule 1.18 of the California Rules of Professional Conduct. Rule 1.18 provides that:

> (a) A person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer of securing legal service of advice from the lawyer in the lawyer's professional capacity, is a prospective client.

> (b) Even when no lawyer-client relationship ensures, a lawyer who has communicated with a prospective client shall not use or reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that the lawyer learned as a result of the consultation, except as rule 1.9 would permit with respect to information of a former client.

> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received from the prospective client information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that is material to the matter, except as provided in paragraph (d). If a lawyer is prohibited from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

> (d) When the lawyer has received information that prohibits representation as provided in paragraph (c), representation of the affected client is permissible if:

>> (i) the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

>> (ii) written notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule.

Cal. Rule of Prof. Conduct 1.18.

# ARGUMENT

## I.   Adaptamed Was A Prospective Client Entitled To Protection Under Rule 1.18

Here, there is no dispute that Adaptamed reached out to Kirkland in February 2026 specifically to secure representation in an "IP lawsuit."  Kirkland responded to this outreach by inviting Adaptamed to discuss the "issues" of the case.  Because Adaptamed, through Ms. Marcoux, communicated with Kirkland in a professional capacity with the intent to form an attorney-client relationship, Adaptamed is entitled to the protections of Rule 1.18.

## II.   Kirkland Must Be Disqualified Because Commure's Interests Are Materially Adverse To Those Of Adaptamed

Disqualification is required here because Kirkland is now representing Commure, a client "with interests materially adverse to those of a prospective client in the same . . . matter."  Cal. Rule of Prof. Conduct 1.18(c).  The adversity here is absolute.  The "time-sensitive IP lawsuit" that Ms. Marcoux discussed with Kirkland is the *exact* litigation in which Kirkland now represents Commure.  Adaptamed and Commure are opposing parties in potentially existential litigation involving Adaptamed's trade secrets, unauthorized access to its software system, and interference with its business relationships.  The legal and factual issues that Adaptamed discussed with Kirkland in February 2026 are not merely "substantially related," they are identical.

## III.   Kirkland Extracted Confidential And Material Information That Is Materially Harmful To Adaptamed

Disqualification is also required because Kirkland received material and confidential information from Adaptamed.  During the 30-minute videoconference discussion between Adaptamed and these three sophisticated and experienced Kirkland partners, Ms. Marcoux disclosed an intention to sue Commure, internal investigative findings, settlement and valuation strategy, and subjective impressions

and assessments of Commure and WC Health's representatives and actions. Each of these pieces of information can easily be weaponized against Adaptamed in discovery, trial, or settlement discussions. *See Winter v. Menlo*, 110 Cal.App.5th 299, 318-319 ("preliminary disclosure of certain information by a prospective client could give the opposing side an advantage in discovery"). Allowing Kirkland to continue representing Commure in this case would be manifestly harmful to Adaptamed.

**IV. <u>Kirkland Cannot Escape Disqualification Because It Failed To Implement Adequate Safeguards</u>**

Kirkland cannot escape disqualification simply because it implemented a belated ethical screen. Where a lawyer has received disqualifying information, the entire firm is vicariously disqualified unless a specific showing can be made. *See* Cal. Rule of Prof. Conduct 1.18(d). Kirkland cannot make that showing.

First, Adaptamed did not provide informed written consent to Kirkland's representation of Commure.

Second, Kirkland took virtually no measures to avoid exposure to more information than was reasonably necessary to determine whether to represent Adaptamed. "[T]he burden is on the attorney to ensure the prospective client shares only as much information as necessary to conduct a conflicts check and nothing more." *Winter v. Menlo*, 110 Cal.App.5th at 320. "It is the attorney, not the prospective client, who must ensure compliance with the rules." *Id*. Kirkland's warning for Ms. Marcoux to "be careful" is wholly insufficient, particularly because not one of the three partners demanded that she stop discussing the case at any point, but instead allowed her to continue for nearly 30 minutes. Worse, Ms. Marcoux twice asked the Kirkland partners whether they needed to clear conflicts before discussing the case, but she was ignored. Had any one of the three Kirkland partners actually run a conflicts check before speaking with Ms. Marcoux, they would have uncovered the conflict, never had the conversation with Ms. Marcoux,

and there would be no disqualification issue or now this motion before the Court.

Indeed, it is standard practice for any law firm—let alone a wealthy global law firm with nearly 4,000 lawyers—to run a conflicts check before a substantive consultation with a prospective client. Failing to perform such a basic conflicts check until *after* extracting Adaptamed's strategy and impressions is a self-inflicted wound that completely undermines the utility of any subsequent screen.

Moreover, even if a screen were implemented, the screen would not be the magical cure-all that Kirkland asserts it is to resolve the fundamental conflict at issue. (*See* Richmond Decl., Ex. A (providing no detail whatsoever concerning the details of any purported screen).) We have been provided with no detail concerning the timing, scope, or nature of any purported screen. Given that Kirkland knew of the conflict on February 10, continued to represent Commure, and did not inform Adaptamed of the specific conflict or implementation of a screen until an email on May 12, 2026, this lack of transparency strongly suggests that the screen was either untimely, porous, or both.

## CONCLUSION

For the foregoing reasons, Kirkland's conduct has created an irreconcilable conflict that cannot be cured. Plaintiff respectfully requests that the Court grant this motion to disqualify Kirkland from representing Commure in this case. Additionally, we ask that Kirkland be ordered not to share tainted work product with any successive counsel for Commure to ensure any confidential information shared with Kirkland is not used in the future against plaintiff.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: May 15, 2026                    LARSON LLP


By:  _____/s/ Rick Richmond_____
                                        Rick Richmond
                                        Catherine S. Owens
                                        Ranja F. Rasul
                                        Jasmine M. Johnson

Attorneys for Plaintiff Adaptamed LLC